UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARLON GIBSON,

                Plaintiff,

-against-

THE TRUSTEES OF COLUMBIA
UNIVERSITY IN THE CITY OF NEW
YORK, DENIS KORE, KELLIE BROWN,
and THERESSA TODMANN,

                Defendants.

Case No. 1:25-cv-03156 (JLR)

**OPINION AND ORDER**

---

JENNIFER L. ROCHON, United States District Judge:

*Pro se* Plaintiff Marlon Gibson ("Plaintiff") was employed by Defendant Trustees of Columbia University (the "University") as a handyperson until the University fired him. In this action, he alleges that his firing was racially motivated. The University, and Defendants Denis Kore, Kellie Brown, and Theressa Todmann (collectively, the "Individual Defendants" and, together with the University, the "Defendants"), move to dismiss Plaintiff's complaint. For the following reasons, the Court GRANTS the motion to dismiss.

## BACKGROUND

### I. Procedural History

On April 11, 2025, Plaintiff filed a Complaint against Defendants, alleging certain violations of "The New York State Amended Civil Rights of 1968" and "Title VII." *See* Dkt. 1 ("Compl.") at 2. He pleaded his injuries as (1) not having "insurance to cover future post surgery physical therapy . . . [or] dental treatment," (2) being "subjected to [a] hostile work environment" and demotion or termination, and (3) nonpayment of certain disability benefits. *Id.* at 6. He sought "compensation of 275-300 million," a "written apology," and for someone to "clear [his] name." *Id.* On April 23, 2025, Plaintiff filed the Amended Complaint. *See*

*generally* Dkt. 5 ("Am. Compl."). The Amended Complaint largely repeats the allegations contained in the Complaint, but it does not set forth any statute under which Plaintiff seeks relief. *Id.*

On August 19, 2025, Defendants moved to dismiss the Amended Complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6). *See* Dkt. 17 ("Mot."); Dkt. 18 ("Friedfel Decl."); Dkt 19 ("Br."). Plaintiff submitted an opposition on August 26, 2025, *see* Dkt. 20 ("Opp."), and Defendants submitted a Reply on September 3, 2025, *see* Dkt. 21 ("Reply"). On September 5, 2025, Plaintiff submitted a letter "re: Response / Rebuttal," which the Court deems a sur-reply.[1] Accordingly, Defendants' motion to dismiss the Amended Complaint is fully briefed.

## II.    Relevant Facts

The Court takes the following facts from the Amended Complaint and the documents attached to it. For purposes of this motion, the Court assumes these facts to be true.

Plaintiff is an African American man, Am. Compl. at 61, who was employed by the University as a handyperson, *id.* at 5. In or around September 2021, Plaintiff sought "a promotional position" as Assistant Supervisor, which would make him responsible for maintaining "5 building units" and overseeing "5-8 employees including temporary employees." *Id.* at 8. Plaintiff's "[s]upervisor of 10yrs," Defendant Denis Kore ("Kore"), told Plaintiff that he "lacked experience" for the role and did not promote him. *Id.* at 8. However, Kore had previously requested that Plaintiff assist him and "other handypersons" on various projects "due

---

[1] Sur-reply is not expressly permitted by Local Rule 6.1(b) or by this Court's Individual Rules, and Plaintiff did not seek the Court's permission before filing his. However, given Plaintiff's *pro se* status and Defendants' lack of objection, the Court will consider his sur-reply to the extent that it reflects and expands upon his pleaded allegations. *See Parkes v. Latch, Inc.*, No. 25-cv-00075 (JLR) (KHP), 2025 WL 2962647, at *2 n.1 (S.D.N.Y. Oct. 21, 2025) (accepting sur-reply where plaintiff was *pro se* and defendant did not object, and collecting cases doing same).

to [Plaintiff's] prior knowledge or education & experience," including Plaintiff's having taken classes through his union and having attended technical high school. *Id.* Kore ultimately hired an outside "candidate of European descent (Caucasian/White)" for the position. *Id.*

Plaintiff appears to allege that Kore, despite passing him over for the promotion, nevertheless asked Plaintiff "to cover the position temporarily" when the outside hire quit only "2-3 weeks . . . or a month" later. *Id.* Indeed, Plaintiff alleges that Kore "advocated for" him to fill the role after the outside hire left. *Id.* at 61. Plaintiff does not allege what this advocacy entailed. Plaintiff also does not allege that he reapplied for the position after initially being passed over, or that he remained in the position beyond his apparently temporary appointment. Plaintiff supervised direct reports in this temporary position, including a "new [h]ire by the name of Sam," who was "of the same ethnic background as" Kore. *Id.* at 8. Sam was "disrespectful towards" and "threaten[ed]" Plaintiff at work in the presence of others. *Id.* After "5 incidents" of such behavior — of which Plaintiff does not provide factual detail — Kore advised Plaintiff to "write [Sam] up." *Id.* Plaintiff speculates that Sam would have been fired for his behavior if he were "of African American [d]escent." *Id.*

At some point during Plaintiff's employment, Kore began to "excessive[ly] micromanage[]" him in an attempt to make him "appear unfit for the position." *Id.* at 9. Plaintiff appears to allege that he once left work early to avoid Kore's oversight and thereafter "experienced a panic or anxiety attack" when Kore informed his own supervisor of Plaintiff's unexcused absence. *Id.* When Plaintiff informed the University's human resources department about Kore's "micromanagement" — which he also describes as "discrimination (racial)" — Defendant Kellie Brown ("Brown") suggested that he apply for a transfer to a different department. *Id.*

Following these events, Plaintiff "experienc[ed] a lower back & hip injury identified as [a] work repetitive stress injury or occupational disease under workers comp." *Id.* Although Plaintiff does not clearly allege the date of this injury, a document attached to the Amended Complaint suggests it occurred on November 23, 2021. *Id.* at 23. The injury required "left hip surgery," *id.* at 8, which Plaintiff scheduled for March 2022, *id.* at 9. Plaintiff "requested a work injury report but . . . was given a[] [Family and Medical Leave Act] ("FMLA")] form as the recourse to commence workers compensation." *Id.* Thus, Plaintiff was "led . . . to believe" that he was granted leave from work under the FMLA, *id.*, and that such leave "was scheduled to end June 15, 2022," *id.* at 2. In fact, Plaintiff alleges, the University had placed him on short-term disability instead of FMLA. *Id.* at 9; *see id.* at 2. As a result, Plaintiff's health insurance policy was "rendered inactive" as of May 6, 2022, *id.* at 9, and thus he could not continue attending his post-surgery physical therapy sessions, *id.* at 8. Plaintiff filed (or told the University he was planning to file) a grievance with his union concerning this medical coverage issue. *See id.* at 39 (referring to "the grievance pending to be filed for the incorrect submission of medical coverage to 32BJ SEIU, [which] was also communicated via email").

Plaintiff missed work during his convalescence; he concedes that his absence was "[t]echnically . . . extensive," *id.* at 9, and he appears to allege that the University fired him for this reason, *id.* at 10. Indeed, Plaintiff attaches a July 12, 2023 letter from the University terminating his employment because he had "been out of work since March 1, 2022 and ha[d] exhausted [his] twelve (12) weeks of leave under the [FMLA]," and explaining that the University could "no longer hold [his] position" for him given that he had recently "extended [his] medical leave to December 15, 2023." *Id.* at 4. Plaintiff asserts that this representation must be untrue. *See id.* at 2 ("[I]f I were under FMLA that apparently ended May 24, 2022 as the letter states it also began March 1, 2022 then why was my medical insurance and or medical

4

coverage of absence rendered inactive with The Union as of May 6, 2022 — for lack of a better word, [m]ake it make sense.").

Plaintiff concludes that the University purposefully placed him on short-term disability, because that type of leave provided the University with a pretextual reason — his long absence — to fire him, whereas FMLA leave would have protected his job. *See id.* at 2 (stating that short-term disability "doesn't protect your job the same"). He contends the University's true motivation for firing him was racial discrimination; he also contends it was retaliation for his "reporting on a matter" to his union and then to certain administrative agencies, *id.* at 3, which appears to refer to his complaint regarding medical coverage, *id.* at 39.

## LEGAL STANDARD

"A 'case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'" *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Lowell v. Lyft, Inc.*, 352 F. Supp. 3d 248, 253 (S.D.N.Y. 2018) (quoting *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)).

Additionally, a plaintiff's "complaint may be dismissed to the extent that it 'fail[s] to state a claim on which relief can be granted.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F. 3d 104, 110 (2d Cir. 2010) (alteration in original) (quoting Fed. R. Civ. P. 12(b)(6)). On a motion seeking such dismissal, the Court "accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor." *Santos v. Medina*, 417 F. Supp. 3d 280, 285 (S.D.N.Y. 2019). However, the Court need not accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir.2002)).

5

Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Where the plaintiff is *pro se*, his complaint "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)); *accord Browne v. Arrow Sec.*, No. 24-cv-09788 (JLR), 2024 WL 5201653, at *1 (S.D.N.Y. Dec. 23, 2024). However, even *pro se* pleadings "must state a plausible claim for relief" beyond "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Caraballo v. Dep't of Corr. City of New York*, No. 22-cv-00971 (JLR), 2022 WL 16555313, at *2 (S.D.N.Y. Oct. 31, 2022) (first quoting *Hogan*, 738 F.3d at 515; and then quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)).

## DISCUSSION

Defendants move to dismiss the Amended Complaint in its entirety under Rule 12(b)(1), on preclusion theories. They argue that any claims by Plaintiff under the New York State Human Rights Law ("NYSHRL") are barred because Plaintiff has previously raised the same factual allegations to the New York State Division of Human Rights (the "Division"), Br. at 12-14, and that the Division's adjudication of those proceedings collaterally estops Plaintiff from raising the same allegations here under Title VII of the Civil Rights Act of 1964 ("Title VII"), *id.* 15-18. Defendants additionally argue, under Rule 12(b)(6), that Plaintiff's Title VII claims against the Individual Defendants should be dismissed because Title VII does not permit individual liability, *id.* at 14, and that the Amended Complaint should be dismissed entirely for failure to state a claim, *id.* at 11-12.

6

The Court will consider these arguments together under Rule 12(b)(6), because "preclusion is not a jurisdictional matter" and, thus, is not a proper basis for dismissal under Rule 12(b)(1). *Fumarelli v. City of Yonkers*, No. 17-cv-06922 (VB), 2018 WL 2435181, at *2 (S.D.N.Y. May 30, 2018) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005)) (addressing preclusion under Rule 12(b)(6)); *see Marungo v. Coletti*, No. 23-cv-09655 (PMH), 2025 WL 563934, at *4 (S.D.N.Y. Feb. 20, 2025) ("address[ing] [d]efendants' collateral estoppel argument under Rule 12(b)(6)").

## I.    Preclusion of Plaintiff's Claims

### A.    NYSHRL Claims

Defendants contend that any claims Plaintiff could bring under the NYSHRL must be dismissed because he has "already pursued" them, twice, before the Division. Br. at 12; *see id.* at 12-14. Defendants attach various filings related to Plaintiff's proceeding before the Division to establish the fact of the prior matters, including his complaints and the Division's two Determinations and Orders After Investigation, which dismiss the complaints for lack of probable cause. *See* Dkts. 18-3, 18-4, 18-9, 18-10. Plaintiff's Opposition does not respond to this argument or these filings, and the Court agrees with Defendants.

Under the NYSHRL, "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages . . . unless such person had filed a complaint hereunder or with any local commission on human rights." N.Y. Exec. Law § 297(9). Thus, "claims, once brought before the [Division], may not be brought again as a plenary action in another court," and any appeal from the Division's determinations may be brought only in New York Supreme Court. *York v. Assoc. of Bar of City of New York*, 286 F.3d 122, 127 (2d Cir. 2002); *accord Joseph v. Westchester Cnty.*

7

*Dep't of Cmty. Mental Health*, No. 20-cv-00420 (NSR), 2020 WL 2555334, at *1 (S.D.N.Y. May 19, 2020).

The allegations in Plaintiff's complaints to the Division mirror his pleadings here.[2]  In his first complaint to the Division, Plaintiff alleged that the University had placed him on short-term disability instead of FMLA so that the University could fire him; he further alleged that the University retaliated against him when he complained about the improper designation.  *See* Dkt. 18-3 at 6.  He also represented that he had complained to the University's human resources department "against [his] supervisor for harassment & discrimination (racial)," and alleged that he had faced "[d]iscrimination (racial), [u]ndermining, abuse of authority/power, bullying, [w]orkplace gas lighting, intimidation, fear, stress, anxiety & depression" during his employment.  *Id.*  Based on these allegations, Plaintiff alleged that the University, Kore, and Todmann (he did not name Brown) had violated section 296 of the NYSHRL and Title VII.  *Id.* at 1.  In his second complaint to the Division, Plaintiff alleged — in language nearly identical to that used in the Amended Complaint — that he had been passed over for a promotion in favor of a candidate "of European descent," that he had temporarily filled the role upon that candidate's

---

[2] "It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)[.]" *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998); *accord Williams v. N.Y.C. Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020) (summary order).  The Division filings and determinations, because they are "records of administrative proceedings, may properly be relied on in connection with this Court's review of [such a] motion." *Cole v. Cent. Park Sys., Inc.*, No. 09-cv-03185 (RRM) (CLP), 2010 WL 3747591, at *3 (E.D.N.Y. Sept. 20, 2010).  Accordingly, the Court takes judicial notice of the Division filings and determinations that Defendants submitted.  *See CITGO Petroleum Corp. v. Ascot Underwriting Ltd.*, 158 F.4th 368, 388 (2d Cir. 2025) ("[A]s a general matter, judicial notice of historical documents, documents contained in the public record, and reports of administrative bodies is proper."  (citation modified)); *see Scarborough v. U.S. Sec. Assocs., Inc.*, No. 19-cv-02037 (DLC), 2019 WL 3369456, at *1 (S.D.N.Y. July 26, 2019) (taking judicial notice of *pro se* plaintiff's Division complaint on motion to dismiss); *Evans v. N.Y. Botanical Garden*, No. 02-cv-03591 (RWS), 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4, 2002) (taking judicial notice of plaintiff's Division complaints and Division's Determinations and Orders After Investigation on motion to dismiss).

departure, that he had been harassed by a new hire named Sam, and that the University had retaliated against him after he reported these issues. Dkt. 18-9 at 6. He alleged that, in these ways, the University, Kore, Todmann, and Brown had violated the NYSHRL and Title VII. *Id.* at 5. After investigating both complaints and "review[ing] . . . related information and evidence" from Plaintiff and Defendants, the Division "determined that there [wa]s no probable cause to believe that [Defendants] ha[d] engaged in or are engaging in the unlawful discriminatory practice complained of," and dismissed the complaints. Dkt. 18-4 at 2; Dkt. 18-10 at 2.

Plaintiff has filed, in this Court, claims under the NYSHRL that he already brought before the Division, that rely on identical factual assertions, and that the Division dismissed on the merits. Accordingly, the NYSHRL bars Plaintiff from asserting those same claims here. N.Y. Exec. Law § 297(9). Plaintiff's claims under the NYSHRL are, therefore, dismissed.

### B.    Title VII Claims

Defendants argue that Plaintiff's Title VII claims against the University are also precluded by the Division's determinations under the doctrine of collateral estoppel. Br. at 15-18. Although Plaintiff does not respond to this argument, the Court is unpersuaded by it.

Collateral estoppel "precludes a party from relitigating an issue actually decided in a prior case and necessary to the judgment." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 411 (2020). Generally, in New York — whose collateral estoppel standard the Court would apply given that the prior judgment was issued there, *see Wilder v. Thomas*, 854 F.2d 605, 616 (2d Cir. 1988) — issues are collaterally estopped when "(1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006).

However, "Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims." *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 796 (1986); *accord Peguero-Miles v. City Univ. of N.Y.*, No. 13-cv-01636 (AJN), 2015 WL 4092336, at *7 (S.D.N.Y. July 6, 2015) (declining to preclude Title VII claims based on same facts presented to state administrative agency because "no state court reviewed the findings of [that] agency"). And *Kremer v. Chemical Construction Corp.*, which Defendants cite, makes clear that the type of review required is one on the merits. 456 U.S. 461, 464, 480 & n.21 (1982) (noting that the Appellate Division "unanimously affirmed" the Division's finding, and holding that the affirmance "necessarily decided that petitioner's claim under New York law was meritless, and thus it also decided that a Title VII claim arising from the same events would be equally meritless"). *See also Barnes v. N.Y.S. Div. of Hum. Rts.*, No. 14-cv-02388 (LTS) (HBP), 2016 WL 110522, at *5 (S.D.N.Y. Jan. 8, 2016) (collecting cases, and barring Title VII claims where plaintiff asserted them in a Division complaint and "both the New York Supreme Court and the Appellate Division affirmed the [Division]'s 'no probable cause' determination and rejected plaintiff's argument" against that determination); *Fetig v. HRA Med. Assistance Program*, No. 10-cv-08191 (RPP), 2011 WL 1795235, at *4-5 (S.D.N.Y. May 6, 2011) (same).

Plaintiff did *seek* merits review in this case before coming to this Court, but it is not clear that he ever received it. According to Defendants, Plaintiff twice sought review in state court, but only of the Division's first determination. The state court dismissed Plaintiff's first petition for improper service — that is, without having reviewed its merits. *See* Dkt. 18-6 at 3-4. Plaintiff refiled the dismissed petition in state court, but while Defendants represent that the refiled petition was set down for oral argument, Defendants also represent that Plaintiff never appeared for that oral argument. *See* Friedfel Decl. ¶¶ 13-16. Defendants further represent that the state court denied Plaintiff's petition on the same day as his failure to appear, but they do not

10

attach a copy of the short form order denying the petition, or even describe its reasoning, *id.* ¶ 17, and so the Court cannot ascertain whether this was a dismissal on the merits or merely on Plaintiff's default in appearing, *see Abdelfattah v. Najar*, 102 N.Y.S.3d 109, 110 (N.Y. App. Div. 2019) ("An order entered upon a party's default in appearing to oppose a motion to dismiss is not a determination on the merits."); *see also Farrell v. Cassano*, 34 F. App'x 11, 13 (2d Cir. 2002) (summary order) (finding "no *res judicata* effect" from default judgment entered due to party's nonappearance in state court proceeding).  In addition, Defendants represent that Plaintiff did not seek state court review of the Division's second no-probable-cause determination.  Br. at 18; *see also* Friedfel Decl. ¶¶ 18-20.  On the documents and arguments Defendants have presented, the Court cannot find that Plaintiff's Title VII claims were reviewed in state court.  *See Beechwood Restorative Care Ctr. v. Leeds*, 436 F.3d 147, 153 (2d Cir. 2006) (explaining that the "proponent of collateral estoppel[] has the burden to . . . clearly establish" its elements).

Therefore, Plaintiff's Title VII claims are not precluded by the Division's findings.

## II.    The Sufficiency of the Pleadings

Even if the Title VII claims are not precluded, Defendants alternatively argue that (1) Plaintiff's Title VII claims against the Individual Defendants should be dismissed because Title VII does not permit individual liability, Br. at 14, and that (2) the Amended Complaint should be dismissed in its entirety for failure to state a claim, *id.* at 11-12.  Plaintiff does not respond to these arguments.  The Court addresses them in turn.

### A.    Claims Against the Individual Defendants

The Second Circuit has held that "Title VII of the Civil Rights Act does not impose individual liability." *Yerdon v. Poitras*, 120 F.4th 1150, 1156 (2d Cir. 2024).  Accordingly, Plaintiff's claims under Title VII as to the Individual Defendants must be, and are, dismissed. *See, e.g.*, *Wright v. City of New York*, No. 23-cv-03149 (KPF), 2024 WL 3952722, at *4

(S.D.N.Y. Aug. 27, 2024) (dismissing "all federal claims against" individual defendant because "Title VII . . . do[es] not provide for individual liability"); *Spence v. Bukofzer*, No. 15-cv-06167 (ER), 2017 WL 1194478, at *9 (S.D.N.Y. Mar. 30, 2017) (dismissing Title VII claims brought against individual defendant).

### B.    Claims Against the University

Defendants next argue that the Amended Complaint should be dismissed because it no longer cites "statutes under which Plaintiff is asserting his claims" and otherwise "fails to plead the basic elements of a cause of action."  Br. at 11-12; *see* Reply at 1-2.

As to Defendants' first argument, "it is well-established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect," and, as a consequence, "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived."  *Neurological Surgery Prac. of Long Island, PLLC v. U.S. Dep't of Health & Hum. Servs.*, 145 F.4th 212, 225 (2d Cir. 2025) (first quoting *Dluhos v. Floating & Abandoned Vessel, Known as New York*, 162 F.3d 63, 68 (2d Cir. 1998); and then quoting *Austin v. Ford Models, Inc.*, 149 F.3d 148, 155 (2d Cir. 1998)).  However, where the plaintiff is *pro se*, courts in this Circuit consider the original and amended complaints together, in an effort to liberally construe the pleadings.  *See Javois v. Ferrara*, No. 18-cv-03997 (GHW), 2020 WL 6585701, at *1 (S.D.N.Y. Nov. 9, 2020) (collecting cases); *accord Roth v. Farmingdale Union Free Sch. Dist.*, No. 18-cv-04319 (AMD) (ARL), 2019 WL 3281126, at *1 n.2 (E.D.N.Y. July 19, 2019).  The Court follows that precedent here.

Plaintiff's initial Complaint provides a statute under which he brings his claims: "The New York State Amended Civil Rights of 1968, Title VII."  Compl. at 2; *see also* Opp. at 13 (referring to "The New York State Amended Civil Rights Act of 1964 Title Vii" and "The Amended Civil Rights Act of 1964, Title Vii").  To be sure, Defendants correctly note that there

12

is no such New York statute, Reply at 1-2, but they understand Plaintiff to refer either to section 296 of the NYSHRL, Br. at 11 n.3, or Title VII, *id.* at 15, or both.  The Court construes Plaintiff's pleadings similarly.  Therefore, the Court disagrees that Plaintiff has failed to cite a statute, even though Plaintiff's Amended Complaint lacks some of the Complaint's initial statutory references.

The Court now turns to the substance of the Amended Complaint's remaining Title VII claims against the University, which the Court construes as claims based on failure to promote, wrongful termination, retaliation, and hostile work environment.  Defendants do not squarely address the sufficiency of Plaintiff's pleading of these claims.  Instead, Defendants broadly characterize the Amended Complaint as "a mixture of handwritten and typed out narratives jumbled together with other documents" that "fails to plead the basic elements of a cause of action."  Br. at 12; *see* Reply at 1-2.  In reviewing the Amended Complaint, the Court agrees that Plaintiff has failed to state a claim for failure to promote, wrongful termination, retaliation, and hostile work environment under Title VII.[3]

### 1. *Failure to Promote and Wrongful Termination*

Under Title VII, an employer cannot "fail or refuse to hire or . . . discharge an individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  *Buon v. Spindler*, 65 F.4th 64, 78 (2d Cir. 2023) (quoting 42 U.S.C. § 2000e-2(a)(1)).  At the pleading stage, "to properly assert a claim of discrimination against an employer

---

[3] Although Defendants identify the statutes under which they believe Plaintiff brings his claims and contend that no claims are stated, Defendants do not set forth the required elements of those claims or specifically explain why Plaintiff's allegations fail to establish them.  However, the Court's examination of the Amended Complaint confirms that it does not state a claim.  *See Leonhard v. United States*, 633 F.2d 599, 609 n.11 (2d Cir. 1980) ("The district court has the power to dismiss a complaint sua sponte for failure to state a claim.").

under Title VII, a plaintiff must 'allege two elements: (1) the employer discriminated against [him] (2) because of [his] race, color, religion, sex, or national origin.'" *Id.* (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015)). "[A]bsent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff (1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Id.* at 79 (alterations adopted) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)).

Regarding the fourth prong, "[a]n inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)). As with any claim, of course, discrimination claims must be supported by "specific and detailed factual allegations, not stated in wholly conclusory terms." *Mumin v. City of New York*, 760 F. Supp. 3d 28, 51 (S.D.N.Y. 2024) (quoting *Williams v. N.Y.C. Health & Hosp. Corp.*, No. 08-cv-04123 (RRM), 2010 WL 2836356, at *4 (S.D.N.Y. July 16, 2010)).

Here, Plaintiff alleges that the University discriminated against him by failing to promote him and by terminating him for discriminatory reasons. The pleadings do not contain sufficient factual detail to support these claims.

Plaintiff adequately pleads that he is the member of a protected class by stating that he is "African American." Am. Compl. at 61. He also adequately pleads adverse employment actions by alleging he was passed over for a promotion and then fired. *See Simmons-Grant v. Quinn*

*Emanuel Urquhart & Sullivan, LLP*, 915 F. Supp. 2d 498, 503 (S.D.N.Y. 2013) (including "termination [and] failure to promote" as "easy to identify" adverse employment actions (quoting *Nat'l R.R. Passenger v. Morgan*, 536 U.S. 101, 114 (2002))).  But Plaintiff does not sufficiently plead the remaining requirements for these claims.

Because Plaintiff alleges both wrongful termination and failure to promote, he must sufficiently plead his qualifications both for the job he held and the job he sought.  *See Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 147 (2d Cir. 2012) (explaining, under similar statute, that a plaintiff must "establish his qualification for the position he holds or seeks").  Plaintiff alleges that he had certain knowledge and experience, including through the completion of coursework in high school and through his union, and that Kore had routinely sought his assistance on various handyperson projects over the years.  *See* Am. Compl. at 8.  These allegations sufficiently plead that Plaintiff was qualified for the handyperson job he held.  *Donnelly*, 691 F.3d at 147 (explaining that a plaintiff must "show only that he possesses the basic skills necessary for performance of the job" (quoting *Slattery v. Swiss Reinsurance Am. Corp.* 248 F.3d 87, 92 (2d Cir. 2001)); *cf. Gregory v. Daly*, 243 F.3d 687, 697 (2d Cir. 2001) (finding qualifications sufficiently pleaded where plaintiff alleged not only that she had worked for employer defendant for ten years, but also that defendant had "promoted her into successively higher positions" in that time).  However, Plaintiff alleges that the Assistant Supervisor role he desired involved, in addition to working as the "[h]andyperson for 5 building units," overseeing "5-8 employees including temporary employees."  Am. Compl. at 8.  The Amended Complaint does not speak to Plaintiff's skills or abilities in managing others, or otherwise plead facts to show his qualifications for the Assistant Supervisor position.  *See, e.g.*, *Smith v. Factory Direct Enters.*, No. 18-cv-03463 (ADS) (AYS), 2019 WL 4221059, at *6-7 (S.D.N.Y. Sept. 5, 2019) (finding qualifications insufficiently pleaded where plaintiff alleged she "met certain

15

performance goals; trained fellow employees; took on additional tasks beyond her role as a sales manager; and was commended for the quality of her work," but did not explain how those allegations demonstrated her qualification for *senior* sales manager position); *Cruz v. Amazon Fulfillment*, No. 21-cv-03092 (LDH) (VMS), 2024 WL 1346528, at *2 (E.D.N.Y. Mar. 29, 2024) (dismissing failure to promote claim where plaintiff alleged that she was "a top working employee" at the company but did "not include any facts regarding her qualifications for the positions to which she applied" at the company (citation omitted)).

Nor does Plaintiff provide sufficient factual support to suggest the University was motivated by discriminatory intent in taking either of these adverse actions; he merely asserts the University was so motivated, *see* Am. Compl. at 8-10, which is not enough, *see Mumin*, 760 F. Supp. 3d at 51 (collecting cases in which courts "rejected Title VII claims . . . at the motion to dismiss stage where plaintiffs provide only generalized, conclusory allegations"). *See also Pell v. Yonkers City Sch. Dist.*, No. 23-cv-10398 (NSR), 2025 WL 2084739, at *6 (S.D.N.Y. July 24, 2025) (dismissing Title VII claim where plaintiff "merely label[ed] [d]efendant's conduct as discriminatory"); *Costabile v. N.Y. Dist. Council of Carpenters*, No. 17-cv-08488 (RWS), 2018 WL 4300527, at *5 (S.D.N.Y. Sept. 10, 2018) (dismissing Title VII claim where plaintiff "allege[d] no facts whatsoever that suggest[ed] the [adverse employment action] took place under circumstances giving rise to an inference of discrimination").

There is no allegation, for example, that anyone at the University ever made statements mentioning Plaintiff's race, color, or national origin; no allegation that anyone at the University ever criticized plaintiff's work in "ethnically degrading terms"; and no allegation that anyone at the University made inappropriate comments about Plaintiff's protected group, or indeed about any protected group at all. *Littlejohn*, 795 F.3d at 312; *see Mumin*, 760 F. Supp. 3d at 54-55 (dismissing Title VII gender discrimination claim where, among other failings, plaintiff "ha[d]

16

not identified degrading comments made by her employer, 'invidious comments about others in [her] protected group,' or troublesome aspects about 'the sequence of events leading to [her] discharge'" (quoting *Littlejohn*, 795 F.3d at 312)); *Arroyo-Horne v. N.Y.C. Police Dep't*, No. 16-cv-03857 (MKB), 2016 WL 8711061, at *11 (E.D.N.Y. Dec. 9, 2016) (dismissing claim where plaintiff failed to allege "any statements by [her coworkers] mentioning [her] race, color or national origin" and collecting cases doing same). Plaintiff does allege that Sam made "disrespectful" or "threaten[ing]" comments to him on occasion, Am. Compl. at 8, but he does not allege that the comments were related to his race. Even if they were, Sam worked under Plaintiff, and "statements from 'lower-level employees who d[o] not have decision-making authority' d[o] 'not give rise to an inference of discrimination'" by the employer. *Torres v. City of New York*, No. 18-cv-03644 (LGS), 2019 WL 1765223, at *3 (S.D.N.Y. Apr. 22, 2019) (quoting *Cincotta v. Hempstead Union Free Sch. Dist.*, 313 F. Supp. 3d 386, 406 (E.D.N.Y. 2018)).

While Plaintiff alleges that the candidate the University hired for the Assistant Supervisor position was "of European Descent (Caucasian/White)," Am. Compl. at 8, he does not allege that the hired candidate was less qualified. Thus, this fact does not give rise to an inference of discrimination. *See Buon*, 65 F.4th at 83, 85 (reversing dismissal where plaintiff alleged she was denied promotion in favor of someone from "another racial and/or ethnic group *who lacked her qualifications*" (emphasis added)); *Edwards v. Elmhurst Hosp. Ctr.*, No. 11-cv-05348 (RRM) (LB), No. 11-cv-05349 (RRM) (LB), 2013 WL 839554, at *4 n.9 (E.D.N.Y. Dec. 4, 2013) ("[P]laintiff's claim that defendant hired a white male for a position plaintiff sought does not, without more, state a claim for racial discrimination."), *report and recommendation adopted*, 2013 WL 831162 (E.D.N.Y. Mar. 6, 2013).

Therefore, Plaintiff does not adequately plead his qualifications or the University's discriminatory intent, and the Amended Complaint fails to state a claim under Title VII for failure to promote and wrongful termination.

### 2. Retaliation

The Court next reviews Plaintiff's retaliation claim. Plaintiff alleges that the University retaliated against him for filing (or advising the University that he would be filing) a complaint against the University concerning his incorrect leave designation. Plaintiff also alleges that he complained to the University about Kore, which the Court will construe as part of his retaliation claim. The Amended Complaint does not contain sufficient factual allegations to support this claim.

To plead retaliation, "a plaintiff must show that (1) '[]he participated in an activity protected by Title VII,' (2) this 'participation was known to h[is] employer,' (3) the employer 'subjected h[im] to a materially adverse' action thereafter, and (4) a 'causal connection' existed between the 'protected activity' and the adverse action." *Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 239 (2d Cir. 2024) (quoting *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010)). The Amended Complaint fails on the first prong alone, because Plaintiff alleges that he complained to his union only about the fact that the University incorrectly put him on short-term disability, Am. Compl. at 39, and that he complained to the University only about Kore's management style, *id.* at 9 — he does not allege that either complaint claimed those issues were rooted in racial discrimination, and therefore he does not allege that they are protected activities for purposes of Title VII. *See Chidume v. Greenburgh-N. Castle Union Free Sch. Dist.*, No. 18-cv-01790 (PMH), 2020 WL 2131771, at *4 (S.D.N.Y. May 4, 2020) (explaining that "[i]t is well settled" that union grievances are not protected activity where they concern "matters other than discrimination"); *Williams v. Home Depot U.S.A., Inc.*, No. 05-cv-2429421 (DAB), 2005 WL

18

2429421, at *14-15 (S.D.N.Y. Sept. 30, 2005) (holding that complaint to employer about supervisor's management style was not protected activity).

Therefore, the Amended Complaint fails to state a claim for retaliation under Title VII.

### 3. Hostile Work Environment

Finally, Plaintiff alleges that the University subjected him to a hostile work environment. To establish such a claim, Plaintiff must "show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn*, 795 F.3d at 320-21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

As discussed, Plaintiff does not allege that his direct report, Sam, subjected him to *discriminatory* abuse — instead he alleges, without elaboration, five incidents in which Sam was merely "disrespectful" or "threaten[ing]." Am. Compl. at 8.  These incidents are both too few and too disconnected from Plaintiff's protected characteristic to state a claim for hostile work environment under Title VII.  *See, e.g.*, *Smith v. HBO*, No. 12-cv-02177 (MKB), 2013 WL 2285185, at *3 (E.D.N.Y. May 22, 2013) (collecting cases and dismissing hostile work environment claim as insufficiently pervasive when based on three incidents); *Alvarado v. Mount Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 781-82 (S.D.N.Y. 2019) (dismissing hostile work environment claim as insufficiently severe where alleged comments were merely "offensive utterances and remarks," because Title VII "does not set forth a general civility code" (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006))).  Plaintiff also alleges that Kore "micromanage[d]" him and caused him to experience anxiety and stress.  Am. Compl. at 9.  But to the extent this is part of Plaintiff's hostile work environment claim, it lacks factual detail indicating that it was motivated by Plaintiff's race (or any other protected characteristic).  Merely "[h]aving an overbearing boss is simply not enough to render an

19

environment hostile under Title VII." *Costello v. N.Y. State Nurses Ass'n*, 783 F. Supp. 2d 656, 680 (S.D.N.Y. 2011).

Therefore, Plaintiff fails to state a hostile work environment claim under Title VII, and Plaintiff's claims against the University under Title VII are, accordingly, dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED, and Plaintiff's Amended Complaint is dismissed. The Clerk of Court is respectfully directed to terminate the motion at Dkt. 17 and close the case.

Dated: January 15, 2026
New York, New York

SO ORDERED.

Jennifer Rochon

JENNIFER L. ROCHON
United States District Judge